is sufficient if not objected to at the time on that ground. At the trial the plaintiff renewed the tender of the borrowed stock, and the Electrical Supply Company stock agreed to be given as a premium, and the sum agreed to be given as compensation, and twice offered to accept back the Portland Gold Mining Company's stock, which was in court in possession of defendant or his counsel. This offer was declined upon the unsubstantial ground that defendant was entitled to damages for the supposed depreciation in value of the Twentieth Century Mining Company's stock. Under these circumstances there was nothing left for the court except to award judgment for plaintiff, if the value of the Portland Gold Mining Company stock was properly proven. At this point, however, the proof failed. The only evidence was that of plaintiff himself, who undertook to state the market price, but his cross-examination shows that he had no knowledge on the subject, and derived the information on which he based his valuation on something he had read in a daily newspaper; but the paper itself was not produced, nor was any evidence given as to how the reports in the newspaper were made up, or from what information they were compiled; consequently no proper foundation was laid for the use of the newspaper report as evidence, even if the paper itself had been produced. Whelan v. Lynch, 60 N. Y. 469, 19 Am. Rep. 202. For this failure of proof as to the value of the stock claimed to have been converted it will be necessary to reverse the judgment, and it is to be hoped that, since both parties are in a position to carry out the contract according to its terms, further litigation may be avoided.

Some question is made by the appellant as to the sufficiency of the tender by plaintiff as a foundation to a claim of conversion, but it is not necessary to examine that question on this appeal.

Judgment reversed, and a new trial granted, with costs to abide the event. All concur.

---

(102 App. Div. 1.)

NEW YORK ARCHITECTURAL TERRA COTTA CO. v. WILLIAMS et al.

(Supreme Court, Appellate Division, First Department. February 24, 1905.)

1. MECHANIC'S LIEN—ENFORCEMENT BY FOREIGN CORPORATION.

Laws 1897, p. 516, c. 418, § 3, in relation to mechanics' liens, provides that a contractor, etc., who performs labor or furnishes materials for the improvement of real property, shall have a lien for the principal and interest of the value or the agreed price. *Held*, that a foreign corporation has a right to file a mechanic's lien to secure the price of materials furnished.

2. FOREIGN CORPORATIONS—PERMISSION TO DO BUSINESS—CERTIFICATE OF SECRETARY OF STATE.

Laws 1892, p. 1805, c. 687, § 15, provides that no foreign stock corporation doing business in the state shall maintain any action in the state on any contract made by it in the state, unless prior to the making of the contract it shall have procured a certificate from the Secretary of State permitting it to do business. *Held*, that "doing business" means maintaining an office and having capital invested and carrying on a regular business, and the mere furnishing, under a contract with the owner, of materials for a building, by a foreign corporation, was not a doing of business, so as to preclude an action on a contract.

**3. CONTRACTS—CORRESPONDENCE—PLACE OF MAKING.**

Where a person in New Jersey sent an offer to furnish materials for a building to a person in New York, who accepted it, but added a condition as to the time for performance, which condition was not approved until received by the other, in New Jersey, the contract was not made in the state of New York, but in New Jersey.

**4. SAME—TERMS—CONSTRUCTION.**

In an action on a contract under which plaintiff furnished steelwork for a building, evidence considered, and *held* that the phrase "all detail drawings," which were required to be furnished by the owner, meant a plan showing the position of each column, beam, etc., and not "shop drawings and punching sheets."

**5. SAME—BREACH OF CONTRACT—REMEDY.**

Where, under a contract for the furnishing of steelwork for a building, the owner was bound to furnish certain plans and drawings, on his refusal to furnish them the remedy of the other party was a refusal to proceed with the contract and hold the owner liable for damages for the breach.

Action by the New York Architectural Terra Cotta Company against John T. Williams and another to enforce a mechanic's lien. From a judgment for plaintiff defendant Williams appeals. Affirmed on opinion of referee.

The following is the opinion of the referee (H. W. Bookstaver):

The basis of this action is a mechanic's lien dated July 14, 1902, in which the Fagan Iron Works, a foreign corporation, seeks to enforce a lien for preparing iron materials furnished by Mr. Williams, and used in the erection of the building known as the "Lord's Court Building," and also for making certain detailed drawings for the preparation of ironwork, and also for furnishing and preparing certain other ironwork used in the erection and construction of that building. The notice of lien does not state the amount claimed for preparing the iron materials, the amount for making the detailed drawings, or the amount for preparing the certain other ironwork, but claims for all three items an unpaid balance of $11,065.25, which was on the trial increased by the sum of $35 for two certain beams, making an aggregate claimed of $11,098.26. By its answer the Fagan Iron Works claims: (1) That it is a New Jersey corporation. (2) That Mr. Williams owns the premises in question. (3) That on December 19th it submitted to Mr. Williams a written proposal for doing all the shopwork for the additional four stories to the Lord's Court building. (4) That on December 28, 1901, the defendant accepted the foregoing proposal in writing. (5) That the Fagan Iron Works fabricated the material and delivered it to Mr. Williams within two weeks after it received the last shipment of the iron. (6) That the reasonable and agreed value of the same was $9,646.77. (7) That at Mr. Williams' request it made detailed drawings, of the value of $1,435.59. (8) That after allowing Mr. Williams a credit of $17.10 for certain iron payments, there remains still due and owing the sum of $11,065.26. (9) The ordinary allegations as to the filing of the lien, etc.

Before this case was referred to me, the defendant Williams moved to be permitted to answer, setting up a counterclaim, which motion was denied by Mr. Justice Bischoff. The case therefore proceeded to trial upon the pleading hereinbefore briefly summarized.

At the conclusion of the plaintiff's case, and again at the close of all the testimony, counsel for the defendant Williams moved to dismiss because the court had no jurisdiction to grant a judgment against Mr. Williams in favor of the Fagan Iron Works in this action, on the grounds:

First. (1) That the notice of mechanic's lien was insufficient in law to create a valid lien, in that it was defective, because it did not state the nature or amount of the services performed and the materials furnished. (2) Because the notice of lien fails and omits to state whether or not all of the work and materials have actually been performed and furnished, and it fails and omits

to state whether any other portion of the work and services alleged to have been performed, and the materials alleged to have been furnished, remained to be performed or furnished. (3) Because the lien filed by the Fagan Iron Works contained a deliberate and willful misstatement in a material and important particular, which was known by the Fagan Iron Works, at the time the lien was filed, to be a misstatement of the facts, in that the said notice of lien included a claim for making certain detail drawings for the preparation of the ironwork, and also for the furnishing and preparing of other ironwork for use in the erection and construction of the building. (4) Because, even if the charge for detail drawings were properly included therein, the notice of lien was willfully and knowingly false, in that it included as the charge for said detail drawings a sum grossly in excess of any sum that the plaintiff was entitled to.

Second. Because the work for which a notice of lien was filed was done without the state of New York, to wit, in the state of New Jersey, and that therefore the Fagan Iron Works, which is a foreign corporation, had no right to file any mechanic's lien to secure the value or price of the services alleged to have been rendered, or the materials alleged to have been furnished.

Third. Because, if any of the work was done in the state of New York for which a valid notice of lien might have been filed, then the defendant the Fagan Iron Works could not maintain this action as it did not comply with the provisions of the corporation law of the state of New York (Laws 1892, p. 1800, c. 687), which require a foreign corporation, before bringing any action in this state, to apply to the Secretary of State for and obtain his permission to do business within the state of New York, and it appeared affirmatively that no such permission had ever been obtained.

Fourth. Because the Fagan Iron Works had not pleaded or proved facts sufficient to constitute a cause of action against the defendant Williams.

The second and third grounds for the dismissal of the proceedings, going, as they do, to the right of the Fagan Iron Works to maintain any action to foreclose a mechanic's lien, should be considered first.

As to the claim that the work for which a notice of lien was filed was done without the state of New York, to wit, in the state of New Jersey, and that therefore the Fagan Iron Works, which is a foreign corporation, had no right to file any mechanic's lien to secure the value or price of the services alleged to have been rendered, or the materials alleged to have been furnished, the terms of the act are very broad, and do not limit the right to file a notice of lien to residents of the state. Section 3 (Laws 1897, p. 516, c. 418) reads: "A contractor, sub-contractor, laborer or material man, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor, or sub-contractor, shall have a lien for the principal and interest of the value, or the agreed price of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article." In Campbell v. Coon, 149 N. Y. 556, 44 N. E. 300, 38 L. R. A. 410, it was held: "The right to a lien under the mechanics' lien law extends to a materialman whose materials have been furnished and used in the construction of a building within this state, with the knowledge and consent of the owner, under a subcontract calling for their delivery by the materialman at and for such building, although such contract was made without the state, and between nonresidents thereof, and does not provide for payment within the state." And: "The operation of the mechanics' lien law in favor of a materialman does not depend upon such incidents of his contract as relate to its character or to the place of payment, but solely upon the fact that the materialman has furnished materials to a building within the state." And of course, a corporation can file a mechanic's lien in any case where a natural person may do so. Gaskell v. Beard, 58 Hun, 101, 11 N. Y. Supp. 399; where it is expressly held that, "where persons are mentioned in a statute, corporations are included, if they fall within the general reason and design of the statute." And in Matter of Simonds Furnace Company, 30 Misc. Rep. 209, 61 N. Y. Supp. 974, it was expressly held that "a foreign corporation not authorized to transact business in the state of New York may file a mechanic's lien against

the owner of a house in this state in whose construction its goods have been used, where it appears that the goods were delivered by it within the state to a domestic corporation, which in turn furnished them to the owner." And this will apply with quite as much force when, instead of being delivered to a third person, they are delivered directly to the owner. I therefore conclude that this point is not well taken.

As to the third ground for a dismissal of the action, to wit, that the Fagan Iron Works had not complied with the provisions of the corporation law of the state of New York requiring foreign corporations, before bringing any action in this state, to apply to the Secretary of State for and obtain his permission to do business within the state of New York, I do not think that the Fagan Iron Works came within the prohibition of the statute requiring such certificate. It maintains no office in the state of New York, has no agents in this state, has no capital invested in the state, and the transaction involved was a single one, and the only one, as far as the evidence shows, ever performed or conducted within this state. Section 15 of the General Corporation Law (Laws 1892, p. 1805, c. 687) provides: "No foreign stock corporation doing business in this state shall maintain any action in this state upon any contract made by it in this state unless prior to the making of such contract it shall have procured such certificate." In order to bring the Fagan Iron Works within the terms of the statute, two things are necessary: (1) That it is doing business within this state; and (2) that the contract was made in the state. "Doing business" evidently means maintaining an office, having capital invested, and carrying along a regular business of some kind. A single act cannot, in my judgment, constitute doing business. Section 16 (page 1806) of the general corporation law further indicates what is meant by "doing business," for it says: "Before granting such certificate the Secretary of State shall require every such foreign corporation to file in his office a sworn copy of its * * * certificate * * * and a statement under its corporate seal setting forth the business * * * which it proposes to carry on within the state, and the place within the state which is to be its principal place of business."

This view of the matter, I think, is abundantly sustained by the authorities. In National Knitting Company v. Bronner, 20 Misc. Rep. 125, 45 N. Y. Supp. 714, where it was not shown that more than a single act of business was done the court said at page 127 of 20 Misc. Rep., page 715 of 45 N. Y. Supp.: "In the second place, so far as appears, the transaction involved herein was a single one, and the only one ever performed or conducted in this state. Such a single transaction or occurrence is not 'doing business,' within the provision of law under discussion."

Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 735, 5 Sup. Ct. 739, 742, 28 L. Ed. 1137: "The obvious construction, therefore, of the Constitution and the statute, is that no foreign corporation was given any business in this state, with the purpose of pursuing or carrying it on, until it has filed a certificate designating the principal place where the business of the corporation is to be carried on in the state, and naming an authorized agent, residing at such principal place of business, on whom process may be served. To require such a certificate as a prerequisite to the doing of a single act of business, when there was no purpose to do any other business or have a place of business in the state, would be unreasonable and incongruous."

As was said in Vaughn Machine Co. v. Lighthouse, 64 App. Div. 139, 142, 71 N. Y. Supp. 799, 801: "In giving effect to this section of the statute, it must be kept in mind that it was not designed to fetter or exclude business from the state. Its aim was to require a foreign corporation, which was on a level in its privileges with one organized here, to bear the burdens and be equally accessible to process with state corporations. To give it the construction contended for by the defendant would interfere with that comity between the states in their trade relations which has been potential in the development of our commercial and industrial business. The crucial test in doing business, within the meaning of this statute, is not an isolated transaction within the state, or the transshipment of goods from the home office pursuant to orders taken by drummers within the state, but it is the establishment of an agency or branch office within our state limits."

In Thompson on Corporations, vol. 6, § 7936, it is said: "Many of the constitutional provisions and statutes under consideration prohibit foreign corporations from doing or carrying on business within the state, unless they have previously complied with the provisions therein named; and the question has frequently arisen, under them, what constitutes a doing or carrying on of business, within their meaning. The general conclusion of the courts is that isolated transactions, commercial or otherwise, taking place between a foreign corporation domiciled in one state and a citizen of another state, are not a doing or carrying on of business by the foreign corporation, within the latter state, but that these prohibitions are leveled against the act of foreign corporations entering the domestic state by their agents and engaging in the general prosecution of their ordinary business therein." Potter v. The Bank of Ithaca, 5 Hill, 490; Suydam v. The Morris Canal & Banking Co., 6 Hill, 217; Cummer Lumber Co. v. Associated Mfrs. Mutual Fire Ins. Co., 67 App. Div. 151, 73 N. Y. Supp. 668; affirmed 173 N. Y. 633, 66 N. E. 1106; Matter of Simonds Furnace Co., 30 Misc. Rep. 209, 61 N. Y. Supp. 974.

A violation of this statute is an affirmative defense, and must be alleged and proved. Nicoll v. Clark, 13 Misc. Rep. 128, 34 N. Y. Supp. 159 (Bookstaver, J.): "We think that this provision of law [section 15, c. 687, p. 1805, Laws 1892] does not affect the cause of action, but only the remedy; that it was not necessary to allege and prove compliance therewith, but that it was a matter of defense."

In Fuller & Co. v. Schrenk, 58 App. Div. 222, at page 225, 68 N. Y. Supp. 781, at page 783, Ingraham, J., speaking of this statute, says: "The general rule is that a defendant who intends to avail himself of the benefit of a statute as a defense to an action for damages for breach of an agreement must specially plead it: A familiar example is the statute of limitations. It has been held that where a defense rests upon a statute, and the fact of a violation of the statute does not appear upon the face of the complaint, the objection must be taken by answer, or the defense is waived." This case was affirmed, 171 N. Y. 671, 64 N. E. 1126.

The defendant Williams did not have to answer in this cause. This defense was open to him, but he has failed to submit any proof to the effect that the Fagan Iron Works was doing business in this state.

Moreover, the contract was not made in this state, if the contention of the Fagan Iron Works as to where the contract was really made, is sustained. What the contract was, and where it was made, are matters to be hereafter considered; but, upon the assumption of the contention of the Fagan Iron Works being correct, then it may be further remarked that the proposition was dated Hoboken, N. J. The acceptance was dated New York, but whether it was mailed here does not appear. At any rate, there was no contract until the Fagan Iron Works had acted upon the acceptance, for it was not identical with the terms of the offer. The defendant Williams had added a condition as to the time of completion. This condition was approved by the home office, in New Jersey, where the letter of acceptance was directed; this approval being evidenced by the act of entering upon the work after receiving the acceptance with the condition attached. In Tallapoosa Lumber Co. v. Holbert, 5 App. Div. 559, 561, 39 N. Y. Supp. 432, 433, Herrick, J., said, relative to an action brought on a promissory note: "The note in question was executed in this state, made payable in this state, and delivered to the plaintiff's agent in this state, so that perhaps it may be said to be a contract made in this state; but it is not a contract made by the plaintiff in this state. It is a unilateral contract, by which the maker and indorser agreed to do something, to wit, pay the amount specified in the note, but the plaintiff made no agreement on its part. But assuming that it was a party to the note, and that therefore it was a contract made by it in this state, still that does not bring it within the statute, unless it was doing business in this state. The contract, for the partial settlement of which the note was given, was not a contract made in this state. While the order was taken here, it was transmitted to Alabama, and was accepted in Alabama, and did not until that time become effectual."

The procuring of orders for goods by commercial agents traveling in this state, which orders have to be transmitted to the home office in another state

for approval there, and then the goods shipped from the home place of business to the purchaser in this state, where the foreign corporation has no office or place of business, does not, I think, constitute doing business in this state, within the meaning of the statute. Murphy Varnish Co. v. Connell, 10 Misc. Rep. 553, 32 N. Y. Supp. 492; Novelty Manufacturing Co. v. Connell, 88 Hun, 254, 34 N. Y. Supp. 717. The two cases cited are in point. American Broom & Brush Co. v. Addickes, 19 Misc. Rep. 36, 42 N. Y. Supp. 871; People ex rel. Southern Cotton Oil Co. v. Roberts, 25 App. Div. 13, 48 N. Y. Supp. 1028; Bertha Zinc & Mineral Co. v. Clute, 7 Misc. Rep. 123, 27 N. Y. Supp. 342; Shelby Steel Tube Co. v. Burgess Gun Co., 8 App. Div. 444, 40 N. Y. Supp. 871; Jones v. Keeler, 40 Misc. Rep. 221, 81 N. Y. Supp. 648.

The defendant Fagan Iron Works clearly does not come within the statute. The contract was made in New Jersey. All the work was done there. The finished material was simply delivered at the building being erected here.

Before determining the remaining questions presented in this action, it becomes necessary to ascertain precisely what the contract was, under which the work was done. This, the Fagan Iron Works contends, was embodied in a proposition and acceptance as follows:

PROPOSITION.

"December 19th, 1901.

"John T. Williams, Esq., New York, N. Y.—Dear Sir: We propose to do all the shop work, including one coat of Princess Metallic or Dixon's Graphite paint for the additional four stories to the Lord's Court Building, New York City, as following, you to supply all detail drawings.

"All plain beams and girders, punched and painted, .00¼ ct. per lb.

"All fittings, such as angle knees, bolts sep. and tie rods, .03¼ cts. per lb.

"All columns painted at .01¼ cts. per lb.

"Cartage, $1.50 per ton.

"We are in a position where we can do this for you as fast as you give us the material, being on the main line of the Erie R. R.

"Hoping to hear from you, we remain,

"Yours truly,                                        Fagan Iron Works,
                                                          "J. H. Bruning, Treas."

ACCEPTANCE.

"December 28th, 1901.

"Fagan Iron Works, 309 Jefferson Street, Hoboken, N. J.—Gentlemen: I hereby accept your proposition of December 19th, 1901, to do all the following work on the material required for the four stories to be added to the Lord's Court Building in this city:

"All plain beams and girders punched and painted ¼ cent per lb.

"Fittings, such as nuts, knees, bolts, braces, tie rods, etc., 3½ cents per lb.

"Columns painted 1¼ cents per lb.

"Cartage $1.50 per ton.

"This order is given with the understanding that you can commence this work in about two weeks time, when you will receive the first shipment of material from the Passaic Rolling Mill, and complete the work and deliver to the Lord's Court Building, No. 27 William Street, within two weeks after you receive the last shipment from Passaic Rolling Mill.

"Yours truly,                                        John T. Williams."

In the absence of any other proof, this proposition and acceptance, if acted upon, would unquestionably establish a contract, complete in all its terms, between the parties. But the defendant Williams contends that this contract was merged in a formal written agreement, drawn in duplicate, and signed by him, a copy of which was delivered to the Fagan Iron Works, and retained by it while the work was being done, and that this constitutes the agreement under which the work was done. The Fagan Iron Works' answer to this is that it never executed that agreement, that it never agreed to accept it, and that the work was not done under it; and, after a careful consideration of all the evidence adduced pro and con, I am of the opinion that this formal agreement was never accepted by the Fagan Iron Works,

either in its entirety, or as to any portion thereof, which made provisions other than those contained in the proposal and acceptance. It may be remarked, in passing, that the only substantial variation between this proposal and acceptance and the written contract were provisions in regard to a time limit and damage clause, the latter of which the defendant Williams admits he did not insist upon; and I think the evidence establishes the fact that the Fagan Iron Works completed the work to be done by them within two weeks after receiving all the material—that is, within two weeks after receiving the last shipment from the Passaic Rolling Mill.

The next question to be determined is, what is meant by the phrase in the proposition, "You to supply all detail drawings." It is obvious, from the refractory nature of the material, that the construction of steel frames for buildings must be planned and executed with the utmost care and precision. In order to accomplish this, it is necessary to have not only a general plan of the building to be constructed, but also a specific plan showing the position of each column, beam, and girder going into the construction, their dimensions, relation to the other parts, and their various connections. There is no dispute but the owner, Williams, on application by the Fagan Iron Works, furnished the survey plan which Von Rohan, a witness for the Fagan Iron Works, and their engineer, testified was the real plan (Williams Exhibit 3), the beam plan (Williams Exhibit 1), the frame plan (Fagan Exhibit Y), the beam and channel plan (Fagan Exhibit C), the column schedule (Fagan Exhibit D), the beam plan (Fagan Exhibit N), detail for brackets under the wall girders (Fagan Exhibit H), and typical detail for plates and angles (Williams Exhibit 2), all drawn to a scale of one-quarter inch to a foot; and Williams' contention upon this point is that these constituted the detailed drawings. Mr. Von Rohan, the Fagan Iron Works engineer, testified on cross-examination that these drawings showed, in general, the columns and the beams and the other steelwork that was to be erected, and from these the shop drawings and punching sheets could be made. The contention of the Fagan Iron Works, on the other hand, is that these did not constitute the detail drawings, but that the shop drawings and punching sheets were what is known in the business as "detail drawings." Considerable evidence on both sides was introduced in regard to this matter, but, after much reflection and examination of all the testimony on the subject, I am convinced that the evidence fully bears out the owner's contention. Indeed, the Fagan Iron Works, by their acts and proceedings in the matter, practically solve the contention in this way, for there is no evidence that Mr. Williams was ever requested to furnish these punching sheets or shop drawings. Von Rohan applied to Mr. Falk, the engineer for the owner, for the drawings furnished by the owner, and did not ask for anything else, but, immediately upon receiving these drawings, proceeded to make the shop drawings and punching sheets. The case is entirely barren of any evidence that any demand was made for anything more, except in a letter to the owner by the Fagan Iron Works, dated January 4, 1902, in which, after acknowledging the receipt of the prints of the column schedule, it is stated, "We received the prints of the column schedule but no details; kindly let us have the same as soon as possible." After this the rest of the exhibits specifically enumerated above were furnished, and no further demand of any kind was made in regard to any details whatever; and Mr. Williams, Jr., says that this letter referred to the typical details of the columns, which he did not think had been sent at that time. The parties very carefully agreed as to what work was to be done, and the prices to be paid therefor, but that contract makes no provision for the payment for these details. Besides all this, the testimony shows that, in nearly all shops working in steel construction, they regularly employ an engineer or draftsman to make these details, which are known as "shop drawings and punching sheets"; and Mr. Von Rohan was so employed by the Fagan Iron Works, and drew the greater part of such detail drawings. In my judgment, therefore, the charge for detail drawings, amounting to $1,435.59, is not sustained, and should not be allowed. But even if the testimony supported the contention of the Fagan Iron Works, still it is extremely doubtful, in my opinion, whether this charge could be allowed, for then the case would stand thus: The owner

was bound to furnish these details, as a condition precedent to the performance of the work by the Fagan Iron Works. If he neglected or refused to furnish them, then the remedy of the Fagan Iron Works would have been to refuse to proceed with its contract, and hold the owner liable for damages for the breach. Parr v. Village of Greenbush, 112 N. Y. 247, 19 N. E. 684.

The defendant Williams contends that the Fagan Iron Works failed to establish full performance, and therefore can recover nothing in this action. Aside from the fact that this proposition is too broad, under many decisions, I think that he has failed to support the contention. The proof submitted by the Fagan Iron Works convinces me that all the work called for by the contract was done according to its terms, and that all the work was carefully examined before it left the shop, and was done in accordance with the plans, punching sheets, etc. It is true that the defendant Williams produced evidence showing that a considerable number of holes were punched in the wrong places, so that, when the various parts were assembled, these holes did not match or fall in the places designated for them; but it was shown on the part of the Fagan Iron Works that these differences arose in large part, at least, by reason of the fact that the positions of the columns varied from the plans furnished it from which to make the drawings and templets. This was clearly the fault of Mr. Williams' employés, who made the plans, and assigned the positions of the columns, girders, etc. While it is quite true that possibly some portion of the mistakes made in this respect was the fault of the Fagan Iron Works, yet the defendant Williams failed to show with any precision which ones were so made, nor the time required to correct them. No timekeeper, nor any person who knows anything about the time which it is alleged was expended in performing the work, was called as a witness before me. It was testified on behalf of Williams that Mr. Abbott, of Messrs. Terry & Tench, had direct charge of this work, and that Mr. Spencer, his own superintendent, knew about the details of the work, though neither of these witnesses was called. Nor were either Mr. Terry or Mr. Tench, or any one employed by them, called to testify to this matter. The work was done by the day, and charged for by the hour, and it was not shown that Mr. Williams undertook to check the amount of time expended. The testimony of Mr. Williams, Jr., fails to show what items were properly chargeable to the mistakes of the Fagan Iron Works. It further appears that some of the errors were due to faulty drawings made by some of his own employés, and ought not to be charged against the Fagan Iron Works. A detailed discussion, however, of all the evidence bearing upon the question of whether or not the Fagan Iron Works properly performed the services they undertook, would be unprofitable; and I conclude that the bills as rendered by the Fagan Iron Works for their services are correct, and should be allowed in full.

The defendant Williams also claims that the bills for detail drawings were so grossly inflated that no recovery whatever should be allowed. This, I think, is untenable. The claim to be paid for detail drawings was debatable. Much evidence was given upon the point. The evidence fails to convince me that there was any intention on the part of the Fagan Iron Works to misrepresent this matter. I am therefore of the opinion that the Fagan Iron Works should have judgment as prayed for, in the sum of nine thousand six hundred and sixty-two and 27/100 dollars ($9,662.27), with interest from the 1st day of June, 1902.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

R. T. Greene, for appellant Williams.

F. Hulse, for respondent Fagan Iron Works.

PER CURIAM. Judgment affirmed, with costs, on opinion of referee.