William R. Hart, J.
In this action to enforce two mechanics’ liens which have been discharged of record by filing of bonds, the defendant, .¿Etna, surety on said bonds, moves to dismiss the complaint pursuant to CPLR 3211 (subd. [a]) on the grounds that (1) plaintiff is an unlicensed foreign corporation and had divested itself of any interest in the liens prior to suit, (2) the court has no jurisdiction of the subject matter in that the alleged divestiture was made pursuant to consent decree by plaintiff under the Clayton Anti-Trust Act in the United States District Court and that therefore the said United States District Court retains jurisdiction for all purposes including the claims in this action, and (3) the complaint fails to state a cause of action in any event. Three corporate defendants who are owners of the affected real property and appear by the same attorney as the surety have likewise moved to dismiss on the same grounds plus an added ground, (4) under CPLR 3211 (subd. [a], par. 8) that the court has no jurisdiction over the person of said corporate owners in that they were never served with the summons and complaint herein. The attorney appearing for the various defendants states that ‘ ‘ both said motions are intended to be the same and argued together ’ ’.
The objection with respect to jurisdiction over the person of the defendants because of alleged nonservice was heard by Hon. Meier Steinbrink who in his report has determined that said service was valid. It need not therefore be considered any further here.
The plaintiff here admittedly did not furnish the material which is the basis of the liens. The material consisting of ready-mix concrete was supplied by M. F. Hickey Co., Inc., a subcontractor. The defendant Cefalu Bros., Inc., appears to have been the prime contractor. The plaintiff here claims to be the successor in interest to said M. F. Hickey Co., Inc., by reason of a merger with the subcontracting corporation “on or about December 1963 ”. The notices of lien in the amounts of $18,315.29, covering material furnished from April 1, 1963 to October 15, 1963 and $16,047.34 for materials supplied from October 15, 1963 to November 15, 1963, were filed respectively on November 27,1963 and December 12,1963. Amended notices of both were filed on December 27, 1963 adding an additional corporate owner. No formal assignment to plaintiff or filing of any such assignment of said liens made pursuant to section 15 of the Lien Law is claimed or pleaded by plaintiff.
*749 The first objection raised by defendants, i.e., that plaintiff has no legal capacity to sue in this State, is based upon section 1312 of the Business Corporation Law which states that: “ A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state ”. It is plaintiff’s contention that, since it is M. F. Hickey Co., Inc., which is a domestic corporation and not this plaintiff which transacted the business, this section has no application. The point appears to be well taken. Our courts have even permitted an unlicensed foreign corporation which itself processed the materials outside the State and then shipped them into New York, to file and sue upon a lien here (New York Architectural Terra Cotta Co. v. Williams, 102 App. Div. 1, affd. 184 N. Y. 579; see, also, Miller v. Fitzpatrick, 227 App. Div. 745 [2d Dept.]). The other point raised by defendants under this same objection, namely that plaintiff had divested itself of the subject matter of the action prior to suit is not substantiated. The decree of the United States District Court presumably requiring plaintiff to rid itself of a business which was held to create a monopolistic control, did not necessarily encompass every claim or asset of the Hickey Company. In point of fact, plaintiff expressly denies that this is so and affirmatively states that the claims in suit were specifically retained and that it is the sole and only owner thereof. Additionally, the position of the defendants in this regard appears to be contradictory. They assert in one and the same breath that plaintiff never got valid title to these liens by proper assignment but nevertheless had sufficient title to divest themselves of the same claims.
The second objection is that the United States District Court has exclusive jurisdiction over any and all matters which concern M. F. Hickey Co., Inc., in view of the consent decree for divestiture by plaintiff. Defendants cite no law in support of this position and this court finds no precedent which can support it and can see no validity in this contention. There is the same inconsistency in this position of the defendants in that although they argue there is no title in plaintiff to these claims, yet they feel the same should be prosecuted by plaintiff in another court. The courts of this State ‘ ‘ are not shorn of their competence ’ ’ when a breach of which they would have jurisdiction is also involved in matters which are normally in the exclusive jurisdiction of the United States District Court. (Underhill v. Schenck, 238 N. Y. 7, 14, as cited in Maryland Plastics v. Gabriel, N. Y. L. J., April 20, 1965, p. 14, cols. 2, 3.)
*750 As for the third objection that the complaint fails to state a cause of action, defendants present a variety of reasons for this argument. The first is that the two causes of action in the complaint are not only contradictory but not even susceptible of intelligent answer. Although possibly somewhat inartfully drawn, this court finds no difficulty in distinguishing and identifying the claim underlying each. It appears to be plaintiff’s position in cause of action No. 1 that Cefalu, the prime contractor under both liens, was responsible as the contracting party and the owners of the premises (together with the surety company as their guarantor) are subject to charge as the recipients of the benefits under the contract for both liens. With respect to the second cause of action, plaintiff recites that it contracted directly with Dunetz Bros., Inc., on behalf of the owners regarding the materials furnished under the second lien. The reason for this direct approach and alleged original promise by this defendant is given in plaintiff’s answering affidavits, to wit: that in view of its difficulties with the prime contractor, it refused to make any further deliveries in the absence of such an original undertaking. It states that all invoices and bills for the materials furnished on and after October 15, 1963 were addressed to Dunetz Bros., Inc., this defendant, and that plaintiff looked to said defendant for payment in the circumstances. The court finds these causes sufficiently stated.
Defendants also raise what they consider a formidable barrier to plaintiff’s claims to the effect that plaintiff, having failed to comply with the provisions of section 15 of the Lien Law regarding filiug of assignments from Hickey to this plaintiff, this action must fail. Defendants cite many cases on this point, but they are not applicable to the facts in this case. Plaintiff does not derive title by assignment as such from Hickey. Its position is rather that of a successor in interest by virtue of section 906 of the Business Corporation Law and other related sections covering mergers and consolidations. Section 906 provides insofar as pertinent here:
“ (b) When such merger or consolidation has been effected:
“ (1) Such surviving or consolidated corporation shall thereafter, consistently with its certificate of incorporation as altered or established by the merger or consolidation, possess all the rights, privileges, immunities, powers and purposes of each of the constituent corporations.
“ (2) All the property, real and personal, including subscriptions to shares, causes of action and every other asset of each *751 of the constituent corporations, shall vest in such surviving or consolidated corporation without further act or deed.” (Italics supplied.)
The governing law on the subject was first settled in Chambers v. Vassar’s & Sons (81 Misc. 562) and, insofar as this court can find, it has never varied. After quoting from the applicable statute (substantially the same as it exists today), the court stated (p. 571): “ More comprehensive language could not be employed to indicate the intention that any right, privilege or property of any and every nature and kind that was vested in the old corporations should be by operation of law transferred to and vested in the new corporation unimpaired by the act of consolidation. It would be contrary to the expressed intention of the legislature by a narrow construction to cut down or limit the broad and comprehensive language of this statute ’ ’.
There is some conflict as to the precise date when the merger took effect. Plaintiff in its complaint alleges that it was “ on or about December 1963 ”. Counsel for plaintiff alleges in an answering affidavit that the certificate was filed “ on or about December 2, 1963 ”. Defendants’ position is that it actually took place on November 29, 1963. However, section 906 of the Business Corporation Law states: “ Upon the filing of the certificate of merger or consolidation by the department of state or on such date subsequent thereto, not to exceed thirty days, as shall be set forth in such certificate, the merger or consolidation shall be effected.” (Italics supplied.) Hence, assuming that such certificate was filed as defendants claim on November 29, 1963, the effective date could still have been postponed for 30 days thereafter. In view of the doubt as to the exact date when such merger took effect, the court makes no determination at this time as to whether the original or amended filings under the name of M. F. Hickey Co., Inc., were valid and effective. There is an added consideration raised by a statement in one of the affidavits submitted on behalf of the plaintiff by George B. Harbison, Assistant Secretary, that “ on December 2, 1963 ” the American Cement Corp., duly filed an application for authority to do business in New York State, paid the fees, and was thereupon authorized to conduct business in this State. Defendants, if so advised, may assert their contention as an affirmative defense in an answer to be served by them.
The final objection on the sufficiency of the complaint as raised by defendants relates to the liability of the owners for a debt allegedly contracted between the plaintiff as a subcontractor and Cefalu as the prime contractor. It is defendants’ position that plaintiff can have no recourse to a lien against *752 the property (and the surety company bond which has been substituted as such security) under these circumstances. It is their contention that plaintiff’s only recourse is against the unpaid portion of the contract price due from the owners to the prime contractor and, since they claim to have made payment in full (evidenced as they state by a general release from Cefalu, a copy of which is annexed to the moving papers), their obligation has been completely satisfied. The brief submitted in support of this contention is replete with authority on this point. However, there are two arguments raised by plaintiff which militate against this position. The first is that there has been a fraudulent arrangement entered into between the prime contractors and the owner corporations to deprive plaintiff of its liens, as well as payment for materials furnished. The contention is at least arguable and is bolstered by a number of considerations. The plea of payment by defendant-owners is supported by no facts, dates or figures other than the ‘ ‘ general release ’ ’ which recites only a ‘1 one dollar ’ ’ consideration. Additionally, plaintiff shows that Cefalu Bros., Inc., is now in bankruptcy and that one of its principals, Mr. Cefalu, ‘ ‘ is now in jail for grand larceny”. Plaintiff has also pleaded and reaffirmed in its affidavits on this motion that in October, 1963 it refused to make any further shipments on the credit of Cefalu and was induced to continue only by the original promise of Dunetz to pay. Based upon these showings by plaintiff, this court holds that plaintiff should not at this point be foreclosed from proceeding further with any proof it may have in the matter. Defendants may, if they be so advised, assert the same objections to the complaint in their answer to be disposed of either by further motion after issue joined or upon trial upon an adequate presentation of additional and pertinent facts.
The motions are denied. Time to answer extended for 20 days after service of copies of orders with notice of entry.